IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GARRY R. FINNELL                                                                                PLAINTIFF

v.                                    Civil No. 08-5095

SHERIFF KEITH FERGUSON,
Benton County, Arkansas;
CAPTAIN HUNTER PETRAY;
NURSE MARSHA SMITH; and
DR. JOHN HUSKINS                                                                              DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Garry R. Finnell (hereinafter Finnell), filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.

Finnell is currently an inmate of the Arkansas Department of Correction (ADC).  In this action, Finnell contends his constitutional rights were violated while he was incarcerated in the Benton County Detention Center from September 26, 2007, until his transfer to the ADC in early October 2008.[1]  Specifically, he contends he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 38).  To assist Finnell in responding to the summary judgment motion, a questionnaire was propounded (Doc. 41) by the Court.  Finnell filed a timely response to the questionnaire (Doc. 44).

Finnell asked the Court to subpoena his medical records from the Northwest Medical Center in Bentonville, Arkansas (Doc. 37).  The request was granted (Doc. 42) and the medical records filed

---

[1] The summary judgment record does not contain the exact date of Plaintiff's transfer to the Arkansas Department of Correction.  However, his intake physical was on October 7, 2008.  *Defts' Ex.* 8 at page 3.  Additionally, a change of address was entered in this case on October 20, 2008 (Doc. 13).

as a supplement (Doc. 45) to Plaintiff's response. The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

On September 26, 2007, Finnell was treated at Northwest Medical Center for a dislocated shoulder. *Plaintiff's Response* (Doc. 44)(hereinafter *Resp.*) at ¶ 1; Doc. 45 at page 3. The emergency room notes indicate Finnell reported being a passenger in a car being chased by the police. Doc. 45 at page 5 & 7. After the car ran off the road, Finnell stated he had been roughed up by the police while getting out of the car. *Id.* at page 7. A post-reduction x-ray was taken and Finnell was provided with a sling. Doc. 45 at page 4 & 10. He was discharged into the custody of the Sheriff. *Id.* at page 6. His discharge instructions were to limit the use of the injured body part, rest, and elevate the injured part. *Id.* at page 12. Finnell was instructed to follow up with a doctor in one week. *Id.* Finnell was discharged at 3:17 a.m. *Id.* at page 15.

He was booked into the Benton County Detention Center (BCDC) at 3:59 a.m. *Id.* at ¶ 2(A). He was released on September 30th. *Id.* He was booked back in on October 2nd. *Defts' Ex.* 1; *Resp.* at ¶ 2(B)("Not sure of date).[2]

On September 26th, Finnell completed a medical questionnaire and stated he was not under a doctor's care but took blood pressure pills and used an inhaler. *Resp.* at ¶ 4. He also noted he was hospitalized on September 25th for a dislocated shoulder, was allergic to penicillin, and that he had

---

[2] Finnell indicates he is not sure of any of the dates. *Resp.* at page 3. He states that some of his paperwork was lost or misplaced when he was transferred from the Tucker Unit of the ADC to Heber Springs, where he is now a "309 inmate." *Id.* He did, however, answer all questions on the summary judgment questionnaire.
     Act 309 of 1983 as amended is an inmate program operated by the Arkansas Department of Correction. The Director of the Department of Correction signs cooperative agreements with county and city officials for the purpose of providing additional space for the care and custody of State inmates on a temporary basis in detention facilities operated by counties and cities. The inmates may be used to work in and around governmental property/projects while under supervision of the sheriff or chief of police or designee.

a heart attack in 1996. *Id.* He signed an Inmate Medical Insurance Information Sheet on September 26th agreeing to be responsible for any/all medical bills for pre-existing injury or illness prior to incarceration. *Id.* at ¶ 5.

Nurse Marsha Smith requested a copy of Finnell's medical records from Northwest Medical Center on September 26th to be used for his continuing care while incarcerated. *Defts' Ex.* 3 at page 1; *Resp.* at ¶ 6 (If I remember correctly, she asked me about it but it was much later before she got it). Finnell requested medical care on September 28th and September 29th for pain in his neck and dislocated shoulder and for blood pressure medication. *Defts' Ex.* 4; *Resp.* at ¶ 7. He was seen by the doctor and prescribed medication including HCT2.[3] *Resp.* at ¶ 8.

On October 1st, Dr. Huskins examined Finnell and advised him to discontinue use of the sling. *Resp.* at ¶ 9. The nurse noted on October 9th that Finnell was refusing to take the HCT2 and that he stated it made him feel funny and like he was dizzy. *Id.* at ¶ 10.

On October 13th, Finnell requested Tylenol or aspirin for his shoulder pain. *Resp.* at ¶ 11. He was put on the list to see the doctor. *Id.* He was treated by Dr. Huskins on October 15th for complaints regarding his shoulder and prescribed Motrin. *Id.* at ¶ 12.

Finnell was seen by Nurse Smith on October 29th. *Resp.* at ¶ 13. She noted that Finnell stated when he performed the exercises the doctor gave him to do, he had pain in his shoulder later in the evening. *Id.* Finnell was put on the list to see the doctor on October 31st. *Id.* Nurse Smith also noted Finnell was still using the sling and she reminded him that the doctor had told him to quit using the sling on October 1st. *Id.* at ¶ 14. Nurse Smith explained to Finnell that the shoulder pain was a result of lack of movement and that the joint would stiffen if he did not exercise his shoulder. *Id.*

---

[3]HCT2 is a blood pressure medication.

On October 30th, Finnell requested pain medication for his shoulder. *Resp.* at ¶ 15. He was to see the doctor. *Id.* Dr. Huskins examined Finnell on October 31st, scheduled an x-ray of his shoulder for November 6th and prescribed Flexeril. *Id.* at ¶ 16.

Finnell requested medical care on November 12th for a boil on his buttocks which was as big as a silver dollar and requested a large band-aid. *Resp.* at ¶ 17. He was put on the list to see the doctor. *Id.*

On November 25th, Finnell requested a heavier blanket and was instructed to ask a deputy. *Resp.* at ¶ 18. On December 27th, Finnell requested medical treatment stating he had no top teeth and could not eat anything hard. *Id.* at ¶ 19. He was put on the list to see the doctor. *Id.* A medical diet was ordered for him to begin on January 2, 2008. *Id.* at ¶ 20. He was to receive a soft diet. *Id.*

Finnell requested medical care on January 27th for a sore throat, fever, cough, and congestion. *Resp.* at ¶ 21(A). He was to see the nurse. *Id.* He was seen by the nurse and put on medication. *Id.* at ¶ 21(B).

He requested medical care on February 24th for a cough, sweats, pain, and runny nose. *Resp.* at ¶ 22(A). He was seen and put on more medication. *Id.* at ¶ 22(B) & ¶ 23.

On March 15th, Finnell requested a new inhaler and was to see the doctor on March 19th. *Resp.* at ¶ 24. On March 16th, Finnell complained that he was not receiving adequate calories and the food was making him sick. *Id.* at ¶ 25. Captain Petray responded, "If you have a medical problem, then you need to put in a medical. The doctor makes the medical decisions in this jail." *Id.*

On March 22nd, Finnell complained, "I have had a PRN for the last 6 months [for an] inhaler. Why can't I get it now?" *Resp.* at ¶ 26. He was to see the nurse. *Id.* Finnell asserts the jailer would not let him use his inhaler when needed as prescribed by the doctor. *Id.*

On March 24th, Finnell complained that he had been using an inhaler for the past two years and everyday since being in the jail for 6 months. *Resp.* at ¶ 27. He stated he needed the medication and asked why he could not receive it. *Id.* A note on the grievance by jail personnel stated, "has inhaler and sheet." *Id.*

Petray responded to Finnell's March 24th grievance by stating that he would forward the request to medical and that the doctor makes the medical decisions in the jail. *Resp.* at ¶ 28. Finnell maintains that Petray simply "put the grievance off on the medical staff" and "would not take responsibility for his officers that was to hand out medication as they were told by" the medical staff. *Id.*

On March 29th, Finnell complained that the nurse had put him on medication but the officers would not give the medicine to him and he was in pain. *Resp.* at ¶ 29. Petray again responded, "I will forward this to medical. The doctor makes the medical decisions in the jail." *Id.* The nurse also responded to Finnell's March 29th grievance regarding medication and noted that medication was ordered on March 31st. *Id.* at ¶ 30.

Finnell complained on March 30th that the nurse had put him on medication for acid reflux and the officers would not give it to him. *Resp.* at ¶ 31. The nurse responded that the medication was not ordered until March 31, 2008. *Id.*

Finnell submitted another grievance on March 30th complaining that the nurse had ordered acid reflux medication for him but he could not get it. *Resp.* at ¶ 32. The nurse responded that the medication had been ordered on March 31st. *Id.*

On March 31st, Finnell complained that he was still not receiving medication. *Resp.* at ¶ 33. Petray responded that he would forward it to the medical department and that the doctor makes the medical decisions in the jail. *Id.*

On April 2nd, Finnell was treated by the nurse for constipation. *Resp.* at ¶ 34. He was given Milk of Magnesia for five days. *Resp.* at ¶ 34; *Defts' Ex.* 3 at page 10.

On April 15th, Finnell requested dentures and major dental attention because he did not have any top teeth. *Resp.* at ¶ 35(A). The nurse responded, "Do you have dentures at home? If so, have someone bring them in." *Id.* In response to the summary judgment motion, Finnell indicates he did not have dentures at home. *Id.* at ¶ 35(B). If he didn't have dentures, Finnell was asked to explain why he did not submit further requests for dental treatment. *Id.* Finnell responded that he didn't think it would do any good. *Id.* He was not in pain. *Id.* at ¶ 35(C). He just had a hard time eating part of the cold food served. *Id.*

On April 15th, Finnell submitted a grievance complaining that he used an inhaler to breathe better but it didn't help with his chest pain and needed to see a doctor because he had spots on his lungs. *Resp.* at ¶ 36. He stated, "A doctor on the outside told me this before I got in jail." *Id.* Sergeant Robbins instructed Finnell to submit a medical request. *Id.*

On April 16th, Finnell requested an inhaler and stated he needed to be treated more and he was having chest pain. *Resp.* at ¶ 37. He also complained that he had spots on his lungs. *Id.* Robbins instructed him to submit a medical request. *Id.*

On April 17th, Finnell requested medical care for chest pain. *Resp.* at ¶ 38. He was put on the list to see the doctor. *Id.*

Dr. Huskins examined Finnell on April 18th and scheduled him for an electrocardiogram (EKG) on May 1st. *Resp.* at ¶ 39. A note was made by Dr. Huskins regarding "inhaler" and "records." *Id.* That day, Nurse Smith requested Finnell's medical records from St. Francis Clinic. *Id.* at ¶ 40.

On April 23rd, Finnell requested medical care for chest pain and was put on the list to see the doctor. *Resp.* at ¶ 41. Dr. Huskins examined Finnell on April 25th for breathing trouble and scheduled an EKG and chest x-ray. *Id.* at ¶ 42. Dr. Huskins continued the albuterol inhaler and prescribed Tylenol and pepcid. *Id.*

On May 5th, Finnell asked to speak with the doctor and nurse about the results of his EKG and about his blood pressure. *Resp.* at ¶ 43. The nurse noted that she spoke to Finnell on May 6th. *Id.*

Finnell complained on May 6th that celery on a soft tray was too hard to eat without teeth. *Resp.* at ¶ 44. Petray responded that if Finnell had a medical issue, he needed to submit a medical request and that the doctor makes the medical decisions in the jail. *Id.*

On May 7th, Finnell submitted a medical request to know the results of his hospital tests and was told that he would be informed as soon as the medical staff received them. *Resp.* at ¶ 45. On May 8th, Finnell complained that the rice on his tray was hard and the carrots were also hard. *Id.* at ¶ 46. Petray responded that he would check with the kitchen. *Id.*

Finnell was treated by the doctor on May 9th. *Resp.* at ¶ 47. He noted Finnell had "improved L rotation." *Id.* Dr. Huskins prescribed Flexeril. *Id.*

Finnell complained on May 15th that he was having side effects from his medication. *Resp.* at ¶ 48. He was put on the list to see the doctor. *Id.*

On May 16th, Finnell was seen by Dr. Huskins. *Resp.* at ¶ 49. He prescribed Milk of Magnesia for a day. *Resp.* at ¶ 49; *Defts' Ex.* 3 at page 14. Finnell was next seen by the nurse on May

22nd for constipation and Milk of Magnesia was prescribed for five days. *Resp.* at ¶ 50; *Defts' Ex.* 3 at page 14.

Finnell maintains that he asked for Milk of Magnesia several times and the guards would not give it to him as needed or even as prescribed by the doctor and nurse. *Resp.* at ¶ 50. However, the record indicates Finnell was not prescribed Milk of Magnesia on a continuing basis. *See e.g., Defts' Ex.* 3 at page 14. Rather, it was prescribed each time for a set number of days. *Id.*

Finnell complained on May 25th that he had not received his Milk of Magnesia and that the guards asked Finnell to sign the sheet for it, then looked for the medication, and then told him there was none. *Resp.* at ¶ 51. He complained that he really needed the medication. *Id.* Finnell was to see the nurse. *Id.* On May 27th, Finnell complained that he was not receiving his Milk of Magnesia. *Id.* at ¶ 52. He was seen by the nurse on May 28th and prescribed Milk of Magnesia for a single day. *Resp.* at ¶ 53; *Defts' Ex.* 3 at page 14.

On May 29th, Finnell submitted a grievance stating that when Officer Finnagin handed out his medication, Finnagin was not wearing gloves and his medication was covered with germs. *Resp.* at ¶ 54. Petray responded, "I will check on this." *Id.*

Finnell complained on June 1st that his mediation was contaminated because even when officers wear gloves, they cough, sneeze, touch their faces, etc. while wearing the gloves. *Resp.* at ¶ 55. Petray responded that he would check on the matter. *Id.*

On June 2nd, Finnell submitted a grievance stating that the jailer dispensing his medication sneezed while holding the medication and while wiping his nose. *Resp.* at ¶ 56. Petray responded, "Who are you saying sneezed?" *Id.* Finnell responded by identifying Officer Tucker. *Id.* at ¶ 57. Petray stated he would check with "this deputy." *Id.*

On June 15th, Finnell submitted a medical request stating that he had the flu. *Resp.* at ¶ 58. He was put on the list to see the doctor. *Id.* He complained on June 17th that he had seen the doctor the day before and been placed on an antibiotic but needed a decongestant. *Id.* at ¶ 59(A). The nurse responded, "taken care of." *Id.* He received the decongestant. *Id.* at ¶ 59(B).

Finnell submitted a grievance on June 26th stating that his medication was contaminated by the officers on duty because they were not wearing gloves. *Resp.* at ¶ 60. Lieutenant Carter responded: "This will be addressed." *Id.*

On July 13th, Finnell complained that Deputy Frischman was one of the officers who contaminated his medication. *Resp.* at ¶ 61. Petray responded that he would check with Deputy Frischman about the matter. *Id.*

Finnell asked to see the doctor on July 18th and complained that he had chest pain and shoulder pain. *Defts' Ex.* 5. He was instructed to submit a medical request. *Id.* On July 20th, Finnell submitted a medical request for chest pain and shoulder pain. *Resp.* at ¶ 63. He was put on the list to see the doctor. *Id.*

On July 26th, Finnell complained that Officer Duncan assigned him to a top rack and his left shoulder still did not work right and he could not pull himself up to the top. *Resp.* at ¶ 64. Jail personnel responded: "Inmate already assigned to bottom bunk #165B." *Id.*

Finnell requested medical treatment on August 3rd for chest pain. *Resp.* at ¶ 65. He was put on the list to see the doctor. *Id.* Dr. Huskins examined Finnell on August 6th for anxiety and stress. *Id.* at ¶ 66. Dr. Huskins indicated Finnell had improved. *Id.* Dr. Huskins encouraged Finnell to do some shoulder movements and started him on amitriptyline for two weeks. *Id.*

On August 18th, Finnell requested medical treatment and stated he was out of his night medication and needed something to relax him during the day time. *Resp.* at ¶ 67. He was put on the list to see the doctor on August 19th. *Id.* On August 19th, Finnell submitted a medical request stating, "the med you gave me only ½ work." *Id.* at ¶ 68. Finnell was to see the doctor. *Id.*

Finnell's medication logs indicate he received the following medications while incarcerated at the BCDC: albuterol inhaler, cyclobenzaprine, smz/tmp os 800-160, tussin cough, erythromycin, naproxen sodium, ranitidine, Milk of Magnesia, acetaminophen, famotidine, nasal decongestant, hydrochlorot, and ibuprofen. *Defts' Ex.* 7.

Finnell's ADC medical records noted that at the time of admission to the ADC he reported using albuterol inhaler with good results in the past. *Resp.* at ¶ 71. He also reported polysubstance drug abuse including meth for 4 years and a drug-related heart attack. *Id.* The only abnormal reference to Finnell's lungs in the ADC records provides: "reports problems with shortness of breath, has been using albuterol with good results. Decreased BX in bases." *Defts' Ex.* 8. The ADC medical records make no mention of a need for a lung biopsy or any record that Finnell reported needing a biopsy. *Id.*

Finnell never communicated with Sheriff Ferguson about his medical care while he was incarcerated in the BCDC. *Resp.* at ¶ 74. Finnell was asked to explain in detail how he believed Dr. Huskins exhibited deliberate indifference to his serious medical needs. Finnell responded:

> I never received any physical therapy on my shoulder after the Benton County officers, that arrested me pulled it out of the socket. I was handcuffed. When I'd talk to him about this he would [always] tell me to exercise it. By turning it around and around. My shoulder is still not right. It's still [weak] and doesn't work [altogether] right. I think he past the buck in a way like the captain did when he'd say the Dr. makes the medical decisions in the jail.

*Resp.* at ¶ 78.

Finnell was also to explain in detail how Nurse Smith exhibited deliberate indifference to his serious medical needs. *Resp.* at ¶ 79. He responded: "Same as [Doctor]." *Id.*

Finnell was asked to explain in detail how Petray exhibited deliberate indifference to his medical needs. *Resp.* at ¶ 80. Finnell responded: "part of his job is the running of the jail. But he'd pas[s] the buck to the Dr. and nurse. Or he would just say I'll check on this. But nothing ever changed. When I'd complain or write a grievance." *Id.*

Finnell was asked if he suffered any physical injury as a result of the deputies handling of his medications. *Resp.* at ¶ 81. Finnell responded that he had the flu or a cold most of the time he was at the BCDC. *Id.* He believes this was due to the deputies' coughing and sneezing on the medication or handling it with their bare hands. *Id.*

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on

speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

As mentioned above, Defendants have now moved for summary judgment. First, they argue Finnell was provided with reasonable and necessary medical care. Second, they argue that there is no showing that Sheriff Ferguson or Captain Petray were personally involved in the alleged constitutional violations and no showing of an unconstitutional policy or custom. Third, they maintain Finnell has shown no actual physical injury. Finally, Defendants maintain they are entitled to the protections afforded by qualified immunity.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but

deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

In this case, Finnell maintains Dr. Huskins exhibited deliberate indifference when he failed to order physical therapy for Finnell's left shoulder. *Resp.* at ¶ 78. Instead, Finnell asserts he was simply told to exercise the shoulder. *Id.*

At the most, the failure to prescribe physical therapy shows an error in judgment on Dr. Huskins' part. "[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)(citation omitted). The type of medication to prescribe, the tests to be ordered, and the appropriate treatment for a given medical condition all involve the exercise of medical judgment. Finnell's mere disagreement with Dr. Huskins' decision is not the basis for § 1983 liability. See e.g., Meiur v. Greene County Jail Employees, 487 F.3d 1115, 118-19 (8th Cir. 2007). See also Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992)("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."). "Medical malpractice alone . . . is not actionable under the Eighth Amendment." Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence. . . . Deliberable indifference is akin to criminal recklessness, which demands more than negligent misconduct." Id. (citations and internal quotation marks omitted).

With respect to Nurse Smith, Finnell also maintains she exhibited deliberate indifference when she failed to prescribe him any type of physical therapy. *Resp.* at ¶ 79. For the reasons discussed above, we find that there is no genuine issue of material fact as to whether Nurse Smith exhibited

deliberate indifference to Finnell's serious medical needs. In this regard, we also note that there is no evidence in the summary judgment record suggesting Nurse Smith, rather than Dr. Huskins, determined the appropriate care for Finnell's shoulder.

We also note Finnell had submitted complaints about not getting his inhaler, having chest pain, and needing a lung biopsy. There is no evidence in the summary judgment record to suggest Finnell suffered any adverse medical consequences as a result of not having an inhaler available to him. Furthermore, the medication logs indicate an inhaler was available to him on as needed basis beginning in early October of 2007 and throughout his incarceration. *Defts' Ex.* 7.

In connection to his complaints of chest pain, an EKG was ordered and he was seen by medical personnel. While the record does not contain the results of the EKG, there is no evidence that Finnell suffered a heart related illness or suffered a heart attack during his incarceration at the BCDC. The record also indicates that when Finnell complained of chest pain Dr. Huskins requested copies of Finnell's medical records from St. Francis Clinic.

With respect to the need for a lung biopsy, there was no indication in Finnell's medical records from the St. Francis Clinic or Northwest Medical Center suggesting Finnell had a spot on his lungs or needed a lung biopsy. *Defts' Ex.* 2 & 3. When Finnell was transferred to the ADC, he did not request a lung biopsy or mention a spot on his lungs. *Defts' Ex.* 8. Apart from the use of the inhaler, there is no suggestion in the summary judgment record that Finnell suffered any breathing or other lung related problems.

With respect to alleged contamination of medication by deputies' failure to wear gloves and/or their acts in sneezing, coughing, or touching their face while dispensing medication, we find there is no genuine issue of material fact as to this claim. See e.g., Free v. Granger, 887 F.2d 1552, 1556 (11th Cir. 1989)("Proof of staffing or procedural deficiencies may give rise to a finding of deliberate

indifference. It is not sufficient, however, to point to the absence of a medical doctor, or of a round-the-clock nurse, and decry the staffing policy as unconstitutional."). Finnell's grievances in this regard were addressed by Petray. While Finnell maintains the practices did not improve after his grievances, there is no suggestion in the record that Petray failed to address these complaints by speaking to the deputies at issue.

Similarly, in the absence of any evidence that Petray did not forward grievances about medical issues to the medical staff, there are no genuine issues of fact as to whether Petray violated the Eighth Amendment by exhibiting deliberate indifference to Finnell's serious medical needs by this conduct. In fact had Petray interfered with the exercise of judgment by medical staff, this would potentially constitute a violation of the Eighth Amendment.

With respect to Sheriff Ferguson, Finnell does not maintain he was directly involved in the decision not to provide Finnell with physical therapy for his shoulder or participated in, or even knew about, Finnell's grievances regarding potential medication contamination. Sheriff Ferguson is not a medical care provider and there is nothing before the court to indicate he was involved in any way in the decision of where, when, or if, Finnell should be provided with medical treatment other than that authorized by Dr. Huskins. See Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). Similarly, there is no evidence to suggest Sheriff Ferguson was involved in responding to Finnell's grievances or was even aware of them. Finnell therefore cannot maintain his denial of medical care claims against Sheriff Ferguson.

**Conclusion**

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 38) be granted.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **1st day of March 2010.**

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE